IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

        v.            :         **CRIMINAL NO. 15-444-01**

MICHAEL H. KEPPLER      :

## UNITED STATES' GUILTY PLEA MEMORANDUM

**I.    INTRODUCTION.**

Defendant Michael Keppler is charged in an information with two counts of wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349. The charges arise from the defendant's participation in a scheme to defraud a business referred to as "Company A," which was the employer of co-conspirator Douglas Rae, by submitting bogus invoices to Company A. A guilty plea hearing is scheduled for Thursday, October 29, 2015, at 3:30 p.m.

**II.    PLEA AGREEMENT.**

Pursuant to the terms of the written guilty plea agreement, the defendant will plead guilty to both counts of the information. A copy of the plea agreement will be forwarded to the Court in advance of the guilty plea hearing.

**III.    ESSENTIAL ELEMENTS OF THE OFFENSES.**

A.    The essential elements of a violation of the wire fraud statute (18 U.S.C. § 1343) are as follows:

    1.    The defendant knowingly devised, or willfully participated in, a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

    2.    The defendant acted with the intent to defraud; and

3.     In advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

B.     The essential elements of conspiracy to commit wire fraud (18 U.S.C. § 1349) are as follows:

1.     Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit mail fraud, as charged in the information; and

2.     The defendant knew the unlawful purpose of the plan and willfully joined in it.

## IV.   MAXIMUM PENALTIES.

The maximum statutory penalty that can be imposed on each count of wire fraud and conspiracy to commit wire fraud is 20 years of imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

Total Maximum Sentence is: 40 years of imprisonment, three years of supervised release, a $500,000 fine, and a $200 special assessment.  Full restitution shall be ordered.

## V.   FACTUAL BASIS FOR THE PLEA.

If this case were to proceed to trial, the government would introduce competent evidence which would establish that, from 2010 to 2012, Michael Keppler was the owner of Keppler Engineers, LLC ("Keppler Engineers"), a New Jersey business that performed engineering services for the lighting industry.  Douglas Rae was the Lighting Department Manager at Company A in West Chester, PA.  Rae was a supervisor and was responsible for purchasing, and overseeing the purchasing of, lighting related products and services, including lamps and other items, as well as merchandise and services relating to larger projects such as studio set designs.  Rae had an outside business entity, Lighting Products International, Inc.

2

("LPI").  Rae controlled and operated LPI, and he controlled the company's bank accounts.

Rae devised several schemes to steal from Company A, one of which involved having Michael Keppler, the owner of Keppler Engineers, a Company A vendor, submit false invoices to Company A.  Rae informed Keppler that LPI, his outside business, wanted to sell merchandise to Company A, and he would allow Keppler to act as the middleman for an approximate 10% profit.  Keppler recognized that he was being asked to participate in the transactions to help conceal Rae's role in doing business with his employer, yet he agreed to participate anyway.  Keppler also realized that as a result of his participation in the transactions, there was a 10% increase in the price of the purported goods.  On four occasions between 2010 and 2011, Rae instructed Keppler to create invoices for purported merchandise sold by Keppler Engineers to Company A, and directed Keppler what items and prices to put on the invoices, and Keppler did as directed.   As designed by Rae, when Company A paid Keppler Engineers the amounts on the bogus invoices, Keppler kept roughly 10% of the funds and forwarded to LPI the remainder.  Rae controlled the LPI bank accounts and used the proceeds for personal expenses.

Three of the four bogus invoices Keppler submitted to Company A from Keppler Engineers contained charges for shipping, suggesting that Keppler Engineers had actually shipped product to Company A, which was false.  Keppler never received or shipped any of the product that was the subject of the bogus invoices.  The government's evidence would show that Rae and LPI never shipped the product to Company A, either.

Then in 2012, Rae instructed Keppler to send him a quotation for services in connection with a dimmer rack installation project at Company A.  Rae provided Keppler with the specific language to include on the proposal, and Keppler created the proposal from Keppler Engineers, as requested.  Rae submitted the Keppler Engineers proposal to Company A. Company A unwittingly approved it.  Then on separate dates, Keppler submitted three invoices

3

for the work he purportedly performed on this project: two invoices for $50,000 each, and a final one for $42,000.  Company A paid each invoice, and again as instructed, Keppler passed on to Rae all but approximately 10% of the proceeds.  Keppler did not perform any of the work in connection with this project.

Each of the bogus Keppler Engineers invoices to Company A, for merchandise and for services, was discussed by Rae and Keppler by e-mail. On September 2, 2012, Keppler sent Rae an e-mail with an attachment, which was the second $50,000 invoice to Company A from Keppler Engineers for purported services performed in connection with the dimmer rack installation project (Count One).  Although Company A paid Keppler Engineers for that invoice, Keppler Engineers did not perform the services.  On October 8, 2012, Keppler sent Rae an e-mail with the attached "Final invoice" for the dimmer rack installation project, a $42,500 invoice from Keppler Engineers to Company A (Count Two).  Company A paid Keppler Engineers for the invoice, but the services were never provided by Keppler Engineers.  Each of the e-mails travelled in interstate commerce.

In this manner, Rae and Keppler caused Company A to pay over $170,000 for goods and services that LPI and Keppler Engineers had not supplied or provided to Company A.

This memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

ZANE DAVID MEMEGER
United States Attorney

*s/ Nancy E. Potts*
NANCY E. POTTS
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically, is available for

viewing and downloading from the Electronic Case Filing system, and was served by electronic

filing and electronic mail upon:

> Ralph A. Jacobs, Esq.
> Jacobs Kivitz & Drake LLC
> 1525 Locust Street, Floor 12
> Philadelphia, PA 19102
> rjacobs@jacobs-kivitz-drake.com


Date: October 29, 2015                    *s/ Nancy E. Potts*
                                          Nancy E. Potts